**TECHNICAL SALES OF JACKSONVILLE,**
**Inc. v. CITY OF JACKSONVILLE, et al.**
No. 71-1008.
Circuit Court, Duval County.
April 9, 1971.

146

Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, for plaintiff.

William Lee Allen, Assistant City Attorney, for the defendant City of Jacksonville.

Kurz, Toole, Taylor, Moseley & Gabel, Jacksonville, for defendant Badger Meter Manufacturing Co.

HENRY F. MARTIN, Jr., Circuit Judge.

*Memorandum opinion and order, April 9, 1971:* The plaintiff was an unsuccessful bidder in connection with the purchase of certain water system equipment of a highly technical nature by the defendant, City of Jacksonville, hereinafter referred to as "the city". Defendant Badger Meter Manufacturing Co., hereinafter referred to as "Badger", was the low bidder to whom the contract has now been awarded.

Plaintiff contends that a portion of Badger's bid was completely at variance with the city's specifications and should have been rejected. Plaintiff further contends that instead of rejecting the bid as required, the city induced or permitted Badger to modify its bid after the formal opening thereof to conform to such specifications. If this is true, plaintiff's contention that the resulting contract is invalid and that any and all payments thereunder should be enjoined is correct.

Defendants contend that the proposal in question is merely an "alternate" proposal and does not constitute an "exception" to the specifications.

### Factual background

The city determined the need for certain highly technical equipment relating to the municipal water system. The services of an

outside consulting engineer were secured to prepared the specifications and related technical data for use in connection with competitive bidding and to thereafter evaluate the bids received.

All prospective bidders received a booklet entitled "Specifications and Contract Documents" which included all pertinent data relating to this project including the "Instructions to Bidders". A complete copy of this document is filed in evidence in this cause as "City of Jax, exhibit 1" and various portions thereof will be referred to by the court at appropriate times.

The various bids were publicly opened on January 5, 1971 and plaintiff immediately objected to Badger's apparent low bid on the ground that it contained a material variance from the specifications. This objection was set forth in detail in a letter from plaintiff to the city dated January 6, 1971. (Plaintiff's exhibit 5).

The city and its consulting engineers, acting as an evaluation committee, thereafter conducted a series of meetings on January 14, 21, 25 and 28, 1971 concerning Badger's bid. The city finally reached the conclusion that Badger's variant proposal was an "alternate" to its base bid instead of an "exception". The contract was thereafter awarded after this litigation was commenced.

### Profferred trial exhibits

At the trial of this cause, plaintiff offered into evidence certain "minutes" of the various meetings referred to in the preceding paragraph, together with a letter of transmittal which accompanied the actual contract when the same was sent to Badger for execution. The city contends that these documents are inadmissible upon the grounds that a city speaks only through its official records and that the "minutes" in question are only unofficial memoranda, Beck v. Littlefield, 68 So.2d 889 (Fla. 1953). The plaintiff contends that they constitute "business records" and are admissible as such.

The court agrees that these various profferred exhibits are admissible to reflect generally what occurred at the meetings; however, these documents do not purport to be verbatim transcriptions of such meetings and contain opinions, conclusions and characterizations by the scrivener and others in attendance which are not binding upon the parties or the court. The court must make an independent determination of the true nature of the proposal in question.

### Decision of court

It is clear that a determination of the true nature of the proposal in question depends upon the construction of the Badger bid and the meaning thereof gathered from such tokens thereof as may be

found in the bid proposal inself[1], which in this case includes all the material contained in the booklet entitled "Specifications and Contract Documents" referred to above.

The court must first determine the basic purpose of the detailed annex which accompanied Badger's base bid since in such base bid it agreed to do all the work in strict accordance with the specifications without exception. This determination will enable the court to decide what portions of said annex are the alternates referred to on the face of the said base bid.

The Instructions to Bidders require that bidders submit their proposal on the form supplied by the city's engineer[2] and that any exceptions to the specifications be clearly noted in said proposal.[3] In this case Badger submitted its proposal on the prescribed form and offered to do the work in strict accordance with the "Contract Documents", which include the specifications, without taking any exception thereto. Badger did specify on the face of its proposal that it was suggesting certain "alternates" in the detailed annex which accompanied its bid.[4]

---

1. Coller v. City of Saint Paul, 26 N. W. 2d 835, 839 (Minn. 1947).

2. "Proposal Forms: The Bidder shall submit his Proposal on the form furnished by the Engineer. The blank spaces must be filled in correctly for each item. The Bidder must state the price, typewritten or written in ink for which he proposes to do each item of work called for."

3. "Exceptions: Incorporation in a Proposal of exceptions to any applicable portions of General Conditions or Special Conditions may invalidate the Proposal. *Exceptions to the Specifications shall be clearly noted in the Contractor's Proposal,* and the use of Contractor's standard forms shall not be construed as constituting an exception. In the event of conflict as to the interpretation of the Contract, the intent of the attached Conditions of the Contract and Specifications shall govern." (Italics added.)

4. "We have received and reviewed a complete set of the Contract Documents for the work titled 'Supervisory Control and Telemetering Equipment for the Municipal Water Utility,' including addenda 1 through 2 therefor, prepared by Reynolds, Smith and Hills Architects-Engineers-Planners, Incorporated, and in submitting this Proposal agree to the following:

   5. To accomplish the work in strict accordance with the Contract Documents.

   *Lump Sum Base Bid:*
   Proposed lump sum price for the work complete and acceptable:
   *Two Hundred Thirty-Three Thousand Seven Hundred and Seventy-Five Dollars* — ($233,775.00)*
   *For alternates to this base proposal see detailed proposal information."

The "Special Conditions", which are also a part of the "Contract Documents", require that a bidder submit *with his proposal* all pertinent information necessary to describe the specific *equipment* the bidder proposes to use in meeting the specifications. [5] This requirement is certainly to be expected since the specifications relating to the equipment consist largely, if not entirely, of performance or functional requirements and capabilities rather than specific equipment.

In compliance with the above requirement, Badger did submit such a detailed list of equipment in the annex to its base proposal. [6] In the body of such descriptive list, certain *alternate equipment* was proposed for other equipment already described therein and these *alternates* were grouped together and referred to again at the end thereof for apparent ease of reference. [7] Referring to equipment alternates in the manner described certainly does not preclude the existence of other alternates within the annex.

The next logical step is for the court to determine whether or not the service proposal contained in the annex could properly and reasonably be considered one of the alternates referred to on the face of Badger's base bid proposal.

The description of the "service" arrangement contained in the annex to Badger's proposal is clearly at variance with the arrangement set forth in the specifications. However, unlike the specifications relating to performance capabilities of the equipment, the specifications did contain a detailed description of the required service arrangement. [8] Thus, the two arrangements could be com-

---

5. "(b) Each bidder shall submit with his proposal descriptive literature, outline dimensional prints, and other pertinent information necessary to fully describe the equipment proposed by him."

6. "Badger Meter Mfg. Company is pleased to offer the following equipment to meet the requirements of the Specifications for Supervisory Control and Telemetering Equipment, Water and Sewer Division of Public Works, Jacksonville, Florida."

7. "ALTERNATES —
The following alternates are mentioned in the text of this proposal, and are listed again with the price difference shown."

8. "(4) Contractor shall make available to the Owner a local Service Department of a duly authorized distributor of the equipment manufacturer which is to stock the manufacturer's standard parts. On-the-

pared by the city's evaluation committee. In addition, the language of the proposal itself leads the court to the conclusion that it was one of the alternates referred to on the face of the base bid. Whether or not such alternate could have been accepted under any circumstances by the city need not be decided since no attempt was made to do so.

The court is unable to conclude from the evidence before it that the method adopted by the city in investigating and dealing with plaintiff's protest is sufficient to invalidate Badger's bid and the resulting contract. The court has not overlooked plaintiff's contention that such activities and meetings on the part of the city, in effect, improperly gave Badger an opportunity to withdraw from the competition after the bids were opened. Even though that is the result plaintiff obviously desired, it is the opinion of the court that Badger could not properly have done so since it had already unequivocally offered and agreed in its base bid proposal not only to complete the work in strict accordance with the contract documents without exception but also to hold the bid open for 30 days after the receipt thereof.

Accordingly, it is adjudged that final judgment shall be entered herein in favor of defendants.

*Final judgment, April 9, 1971;* This cause coming on for trial before the court without a jury and the court having considered the evidence adduced by the respective parties and in accordance with the memorandum opinion filed herein, it is adjudged that the plaintiff, Technical Sales of Jacksonville, Inc., is not entitled to the relief prayed for against the defendants, City of Jacksonville and Badger Meter Manufacturing Co., and plaintiff's complaint be and the same is hereby dismissed with prejudice.

---

premises maintenance is to be provided during normal working hours at no cost to the Owner for a period of twelve months from date of completion of installation unless damage is caused by misuse, abuse or accident. On-the-premises service furnished at other than normal working hours must also be available and may be charged for by the manufacturer's distributor at current labor rates. Spare parts and parts lists as recommended by the manufacturer shall be supplied with all equipment."